FILED - WESTERN DIVISION
CLERK, U.S. DISTRICT COURT

JAN 1 0 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPU

1  GEORGE S. CARDONA
2  Acting United States Attorney
   LEON W. WEIDMAN
3  Assistant United States Attorney
   Chief, Civil Division
4  MONICA L. MILLER
5  Assistant United States Attorney
   California State Bar No. 157695
6        Room 7516 Federal Building
         300 North Los Angeles Street
7        Los Angeles, California 90012
8        Telephone: (213) 894-4061
         Facsimile: (213) 894-7819
9        Email: monica.miller@usdoj.gov

10 ROSE B. FUA
11 Deputy Attorney General
   Cal State Bar No. 119757
12 1515 Clay Street, Suite 2000
   P.O. Box 70550
13 Oakland, California 94612-0550
14       Telephone: (510)622-2126
         Facsimile: (510)622-2272
15       Email: Rose.fua@doj.ca.gov

LODGED
CLERK, U.S. DISTRICT COURT

2007 14 2007

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

16 Attorney for The People of The State of
17 California, Ex Rel. Attorney General Edmund G. Brown, Jr.

18            UNITED STATES DISTRICT COURT
             FOR THE CENTRAL DISTRICT OF CALIFORNIA
19
                                    CV 07-03152 Mmm (FMOx)
20
21 UNITED STATES OF AMERICA and   )   CIVIL ACTION NO.
   THE PEOPLE OF THE STATE OF     )
22 CALIFORNIA, EX REL. ATTORNEY   )   CONSENT DECREE
   GENERAL EDMUND G. BROWN, JR.,  )
23                                )
                                  )
24            Plaintiffs,         )
                                  )
25 LINDER & ASSOCATIES,           )
                                  )
26            Defendant.          )
   _____)
27
28

                         1

WHEREAS, Plaintiffs, the United States of America, on behalf of the United States Department of Housing and Urban Development ("HUD") and the United States Environmental Protection Agency ("EPA"), and the People of the State of California, Ex Rel. Attorney General Edmund G. Brown, Jr., ("the People") have filed a complaint alleging that Linder & Associates ("Defendant") violated Section 1018 of the Residential Lead-Based Paint Hazard Reduction Act of 1992 ("Section 1018"), 42 U.S.C. § 4852d and the California Unfair Competition Law, California Business and Professions Code section 17200 *et seq.* ("UCL"); and

WHEREAS, Section 1018 and the implementing regulations, found at 24 C.F.R. Part 35, Subpart A, and 40 C.F.R. Part 745, Subpart F, require, among other things, that the managing agents of apartment buildings subject to the law make certain disclosures concerning Lead-Based Paint and Lead-Based Paint hazards to tenants when a new lease is entered into or, if the lease predates the effective date of Section 1018, at the first change to the terms of an existing lease, such as a rent increase; and

WHEREAS, Defendant manages 53 residential properties in the State of California constructed prior to 1978 containing approximately 805 units; and

WHEREAS, the United States and the People allege that Defendant failed to make certain disclosures required by Section 1018 in these residential properties in the State of California; and

WHEREAS, the United States alleges it is entitled to seek injunctive relief in a judicial action, including, but not limited to, an order requiring Defendant to comply with Section 1018 prospectively, and an order requiring Defendant to abate Lead-Based Paint; and

WHEREAS, the United States alleges Defendant is subject to administrative civil penalties by HUD and EPA for violations of Section 1018 of up to $11,000 per violation; and

WHEREAS, the People allege that Defendant has engaged in unfair business practices, in violation of California's UCL, by failing to comply with Section 1018 and the Los Angeles County Health and Safety code section 11.28.030 ("Los Angeles County Ordinance"); and

WHEREAS, the People allege that they are entitled to injunctive relief pursuant to the UCL requiring Defendant to comply with Section 1018 and the Los Angeles County Ordinance and an order requiring Defendant to abate Lead-Based Paint; and

WHEREAS, the People allege that Defendant is subject to a penalty by the People for violations of the UCL of up to $2,500 per violation; and

WHEREAS, the United States, the People, and Defendant agree that settlement of the claims of the United States without further litigation is in the public interest and that entry of this Consent Decree is an appropriate means of resolving this matter; and

WHEREAS, the United States, the People, and the Defendant agree that judicial economy is served by having state and federal claims resolved in the same lawsuit; and

WHEREAS, the United States, the People, and Defendant agree that settlement and entry of this Consent Decree does not constitute admission or acknowledgment of liability or wrongdoing by Defendant, but is intended solely to settle all claims asserted by the United States and the People against Defendant on the terms set forth herein;

NOW, THEREFORE, upon consent and agreement of the United States, the People, and Defendant, and the Court having considered the matter and been duly advised,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

## I.   JURISDICTION AND VENUE

1.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. § 4852d(b)(2) and also has personal jurisdiction over the Defendant.  Defendant consents to, and shall not challenge

entry of, this Consent Decree and the Court's jurisdiction to enter and enforce this Consent Decree.  This Court has jurisdiction over the subject matter of the claims made under state law in this action under 28 U.S.C. § 1367(a) (supplemental jurisdiction) because the claims under state law arise out of the same common nucleus of facts as the federal question jurisdiction claims set forth in this Complaint and they are so closely related to the actions brought under federal law that they form part of the same case or controversy.

2.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c) because the lawsuit involves actions that took place, and the Subject Properties are located in the Central District of California.

## II.   PARTIES BOUND

3.   This Consent Decree shall apply to and be binding upon the United States, the People, and Defendant, and its successors and assigns.

## III.   DEFINITIONS

4.   Unless otherwise expressly provided herein, terms used in this Consent Decree, which are defined in the Residential Lead-Based Paint Hazard Reduction Act ("Act"), shall have the meaning given in the Act or in any regulations promulgated pursuant to the Act.  Whenever other terms listed below are used in this Consent Decree, the following definitions shall apply:

a.   "Clearance Examination" shall mean an activity conducted after Lead-Based Paint Hazard Reduction Work has been

performed to determine that the Hazard Reduction Work is complete and that no settled dust-lead hazards exist. The clearance process includes a visual assessment and collection and analysis of environmental samples. The appropriate clearance standards shall be the more restrictive of those set by the jurisdiction where the property is located or by Section 403 of the Toxic Substances Control Act ("TSCA") and its implementing regulations, 40 C.F.R. Part 745, Subpart D.

b.   "Day" shall mean a calendar day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

c.   "Hazard Reduction Work" shall mean any activity designed to reduce or eliminate human exposure to Lead-Based Paint hazards through methods including interim controls or abatement or a combination of the two.

d.   "HUD Guidelines" shall mean the edition of the "HUD Guidelines for the Evaluation and Control of Lead-Based Paint Hazards in Housing" in effect on the date the work is conducted pursuant to this Consent Decree.

e.   "Interest" shall mean interest pursuant to 28 U.S.C. § 1961.

f.   "Lead-Based Paint" shall mean paint or other surface coatings that contain lead equal to or in excess of 1.0 milligrams per square centimeter or 0.5 percent by weight.  If housing subject to this Consent Decree is located in a jurisdiction with a more stringent definition of lead-based

paint or safety standard, such as the 0.7 milligrams of lead per square centimeter standard in Los Angeles County, "Lead-Based Paint" shall mean paint or other surface coatings that meets the more stringent standard.

g.   "Lead-Based Paint Free" shall mean housing that has been found to be free of paint or other surface coatings that contain lead equal to or in excess of 1.0 milligrams per square centimeter or 0.5 percent by weight.  If housing subject to this Consent Decree is located in a jurisdiction with a more stringent definition of lead-based paint or safety standard, such as the 0.7 milligrams of lead per square centimeter standard in Los Angeles County, "Lead-Based Paint Free" shall mean housing that meets the more stringent standard.

h.   "Lead Abatement Supervisor" shall mean any person licensed by the State of California as a Certified Lead Supervisor to perform lead abatement and mitigation, and supervise lead abatement workers who perform lead abatement and mitigation, as defined in Cal. Code Regs. Tit. 17, § 35008 (2004).

i.   "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or a lower case letter.

j.   "Section" shall mean a portion of this Consent Decree identified by a roman numeral.

k.   "State" shall mean the State of California.

l.   "Subject Properties" shall mean the properties listed on Appendix A, attached hereto.

m.   "United States" shall mean the United States of America on behalf of HUD and EPA.

n.   "0-bedroom dwelling" shall mean any residential dwelling in which the living area is not separated from the sleeping area.   The term includes efficiencies, studio apartments, dormitory housing, military barracks, and rental of individual rooms in residential dwellings.

## IV.   COMPLIANCE WITH SECTION 1018

5.   Defendant shall comply with all requirements of Section 1018 and its implementing regulations.

6.   To the extent not previously accomplished, no later than ten (10) days after entry of this Consent Decree, Defendant shall provide to each tenant in the Subject Properties a lead hazard information pamphlet approved by EPA, as well as a "lead paint disclosure form" which shall include at a minimum the following:

a.   Any known information concerning Lead-Based Paint hazards and/or Lead-Based Paint;

b.   Any available records or reports, or summaries thereof, pertaining to Lead-Based Paint hazards and/or Lead-Based Paint; and

c.   A Lead Warning Statement containing the specific language set forth in regulations promulgated pursuant to Section 1018.

7.   Within twenty (20) days after entry of this Consent Decree, Defendant shall provide written notice to HUD

and EPA that it has complied with the requirements of Paragraph 6 of this Consent Decree.

## V.  PAYMENT OF PENALTY

8.  Within thirty (30) days after entry of this Consent Decree, Defendant shall pay a civil penalty of $7,700.00 to the United States as an administrative penalty for past violations of Section 1018.

9.  Payment of this penalty shall be effected by Electronic Funds Transfer ("EFT") to the United States Department of Justice, in accordance with current EFT procedures, referencing the USAO File Number 1999V02563 and DOJ Case Number 90-5-1-1-07223/1, and the civil action case name and case number.  Payment shall be made in accordance with instructions provided to Defendant by the Financial Litigation Unit of the U.S. Attorney's Office for the Central District of California.  Any funds received after 11:00 a.m. (EST) shall be credited on the next business day.

10.  Within thirty (30) days after entry of this Consent Decree, Defendant shall pay costs in the amount of $2,300.00 to the State of California.  This payment shall be rendered by check or money order made payable to "Attorney General of the State of California" and shall be sent by certified mail, overnight delivery, or hand delivery to Rose B. Fua, Deputy Attorney General, 1515 Clay Street, Suite 2000, P.O. Box 70550, Oakland, CA 94612-0550.

11.  Notification that payment of the penalty to the United States has been made, referencing the USAO File Number

1999V02563 and DOJ Case Number 90-5-1-1-07223/1 and the civil action case name and case number, shall be provided in accordance with the notification provisions of Section XVI.

12.   If Defendant fails to make any payment under Paragraphs 8 or 10, it shall be subject to Stipulated Penalties pursuant to Paragraph 25 of this Consent Decree.   In addition, Interest shall accrue on any unpaid amounts until the total amount due has been received.

13.   Defendant shall not deduct the penalty, costs, or any Interest or Stipulated Penalties, paid under this Consent Decree from its federal, state, or local income taxes, and the United States does not in any way release Defendant from any claims arising under Title 26 of the United States Code.

## VI.   WORK TO BE PERFORMED

14.   This Section shall govern the Lead-Based Paint inspection and Hazard Reduction Work to be performed under this Consent Decree at all Subject Properties.

15.   To the extent not previously accomplished, no later than thirty (30) days after entry of this Consent Decree, Defendant shall have inspected all Subject Properties for Lead-Based Paint consistent with Chapter 7 of the HUD Guidelines. For those Subject Properties inspected prior to entry of this Consent Decree, HUD and EPA have accepted the inspections as performed.   For the two 0-bedroom only Subject Properties (1335 S. Bronson and 1308 S. 5th Avenue), those units with children six (6) years of age or under shall be inspected along with the common areas and exteriors of those Subject Properties.   For

each Subject Property, Defendant shall provide a copy of each Lead-Based Paint inspection report ("Inspection Report") to HUD and EPA no later than forty-five (45) days after receipt of the report.

16.   No later than forty-five (45) days after entry of this Consent Decree, Defendant shall submit a list of Subject Properties divided into Group 1 and Group 2.   Group 1 Subject Properties shall include all properties where the Inspection Report indicates the condition of the lead-based paint is identified as fair or deteriorated.   Group 2 Subject Properties shall include all properties where the Inspection Report indicates all lead-based paint is in an intact condition.

17.a.   No later than one hundred and twenty (120) days after entry of this Consent Decree, Defendant shall provide to HUD and EPA copies of a plan for Lead-Based Paint Hazard Reduction Work ("Hazard Reduction Plan") for all Subject Properties where Lead-Based Paint has been identified.   The Hazard Reduction Plan shall be prepared by a certified Lead Abatement Supervisor and shall include:   (1) a description of abatement methods to be used in Group 1 properties; (2) a description of interim control methods to be used in Group 2 properties if deteriorated paint is identified through ongoing operations and maintenance; (3) information about the components to be treated, including location and condition; (4) a description of training to be provided to workers performing visual assessments and interim controls; and (5) the names and certification numbers of certified contractors used for

abatement.   The Hazard Reduction Plan shall be prepared to ensure that Lead-Based Paint Hazard Reduction Work required by Section VI of this Consent Decree is conducted in accordance with Chapters 11, 12 and 13 of the HUD Guidelines.   The Hazard Reduction Plan shall include specifications as provided in the HUD Guidelines, Appendix 7.3. Lead-Based Paint Abatement Specification, or the equivalent.

b.   After review of the Hazard Reduction Plan, HUD shall, in writing:   (1) approve, in whole or in part, the submission; (2) approve the submission with modifications; or (3) disapprove, in whole or in part, the submission, directing the Defendant to resubmit the document after modification to address HUD's comments.   If HUD disapproves of or requires revisions to the Hazard Reduction Plan, in whole or in part, Defendant shall amend and submit to HUD and EPA a revised Hazard Reduction Plan which is responsive to the directions in HUD's comments, within twenty-one (21) days of receiving such comments.   The Hazard Reduction Plan must be approved by HUD before any work is performed at the Subject Properties pursuant to this Consent Decree.

c.   No later than thirty (30) days after approval of the Hazard Reduction Plan, Defendant shall submit a plan to HUD for ongoing operations and maintenance ("O&M Plan") for those properties that are not Lead-Based Paint Free.   The O&M Plan shall include a plan to monitor all lead-based paint identified in both Group 1 and Group 2 properties.   The O&M Plan shall include provisions to perform visual assessments of units,

common areas, and exteriors on a regular basis in accordance with Chapter 6 of the HUD Guidelines, and upon tenant turnover.

d.   After review of the O&M Plan, HUD shall, in writing:  (1) approve, in whole or in part, the submission; (2) approve the submission with modifications; or (3) disapprove, in whole or in part, the submission, directing the Defendant to resubmit the document after modification to address HUD's comments.  If HUD disapproves of or requires revisions to the O&M Plan, in whole or in part, Defendant shall amend and resubmit to HUD a revised O&M Plan which is responsive to the directions in HUD's comments, within twenty-one (21) days of receiving such comments.  The O&M Plan shall be prepared in accordance with Chapters 6 and 17 of the HUD Guidelines.

18.   For each Subject Property where Lead-Based Paint has been identified, the following work shall be performed, in accordance with the Hazard Reduction Plan:

a.   All windows in all units and common areas of the Subject Properties not identified as Lead-Based Paint Free shall be replaced in accordance with Chapter 12 of the HUD Guidelines by the following deadlines:

i.   For Group 1 non 0-bedroom dwelling Subject Properties, no later than four (4) years after approval of the Hazard Reduction Plan;

ii.   For Group 1 0-bedroom dwelling Subject Properties with children six (6) years of age or under, no later than five (5) years after approval of the Hazard Reduction Plan;

iii.   For Group 2 non 0-bedroom dwelling Subject properties, upon tenant turnover, but no later than five (5) years after approval of the Hazard Reduction Plan; and

iv.   For Group 2 0-bedroom dwelling Subject Properties with children six (6) years of age or under, upon tenant turnover, but no later than six (6) years after approval of the Hazard Reduction Plan.

b.   For Group 1 Subject Properties, any surfaces and/or components in any units, common areas, and exteriors identified as having Lead-Based Paint in a fair or deteriorated condition shall be abated in accordance with the Hazard Reduction Plan and with Chapters 12 and/or 13 of the HUD Guidelines by the following deadlines:

i.   For non 0-bedroom dwelling units, within four (4) years after approval of the Hazard Reduction Plan; and

ii.   For 0-bedroom dwelling units with children six (6) years of age or under, within five (5) years after approval of the Hazard Reduction Plan.

iii.   For all Group 2 Subject Properties, upon approval of the O&M Plan, the Defendant shall perform ongoing operations and maintenance work of surfaces and/or components in units, common areas, and exteriors identified as having Lead-Based Paint in accordance with the O&M Plan and with Chapters 6 and 17 of the HUD Guidelines.  As part of ongoing operations and maintenance work, the Defendant shall perform interim controls for any surfaces and/or components later identified in a deteriorated condition in

14

accordance with the Hazard Reduction Plan and with Chapter 11 of the HUD Guidelines.

d.    No later than one (1) year after approval of the Hazard Reduction Plan, any bare soil identified on the grounds of each Subject Property shall be covered with a vegetative ground covering, mulch, or other appropriate covering in accordance with Chapter 11 of the HUD Guidelines.

e.    Worksite preparation and occupant protection shall be in accordance with Chapter 8 of the HUD Guidelines.

f.    Daily and final cleanups shall be in accordance with Chapter 14 of the HUD Guidelines.

g.    Clearance Examinations shall be conducted by a certified Lead-Based Paint risk assessor in each building upon completion of final cleanup in accordance with Chapter 15 of the HUD Guidelines, TSCA Section 403, 15 U.S.C. § 2683 and 40 C.F.R. §§ 745.227(e)(8) and (9).  Within fifteen (15) days of the receipt of any Clearance Examination Report ("Clearance Report"), the Defendant shall submit the Clearance Report to HUD, any required state agency, and any required local agency. The Clearance Report shall contain all results of dust samples analyzed at an EPA-accredited laboratory.  If the results indicate the clearance standard is not achieved, Defendant shall repeat the cleaning procedures identified above under Paragraph 18.f., repeat dust clearance sampling within five (5) days of the failed Clearance Report, and repeat this procedure until the clearance standard has been attained.  All additional Clearance Reports shall be submitted as described above.

h.    In each year Defendant shall make substantial and reasonable progress on the Lead-Based Paint Hazard Reduction Work agreed to in this Consent Decree and shall detail the progress made in the Annual Report required in Paragraph 24 of this Consent Decree.  The parties agree that substantial and reasonable progress shall mean completion of at least twenty (20) percent of the remaining inventory of Subject Properties in each year.

19.   All the requirements of this Section, except the timelines, shall apply in any instance where Defendant or any governmental entity is or becomes aware of a Subject Property where a child with an elevated blood lead level resides or is a regular visitor.  Defendant shall perform an inspection and complete all required Hazard Reduction Work within five (5) months after Defendant is or becomes aware of a property where a child with an elevated blood lead level resides or is a regular visitor.  Defendant shall also comply with any work required by any other government entity, such as the City, County, or State within the timelines imposed by that entity.

20.   Ongoing operations and maintenance work in all Subject Properties that are not certified Lead-Based Paint Free shall be implemented at the completion of any Hazard Reduction Work within thirty (30) days of the Clearance Examination, and shall be in accordance with the O&M Plan and Chapters 6 and 17 of the HUD Guidelines.  During reevaluations, Defendant shall ensure that all surfaces and/or components with Lead-Based Paint are still intact and the Hazard Reduction Work performed has not

failed.  If any Hazard Reduction Work has failed in Group 1 properties, Defendant shall repair the area in accordance with Chapters 12 and/or 13 of the HUD Guidelines and perform a Clearance Examination within thirty (30) days of discovery.  If any surfaces are identified with deteriorated Lead-Based Paint in Group 2 properties, Defendant shall repair the area in accordance with Chapter 11 of the HUD Guidelines and perform a Clearance Examination within thirty (30) days of discovery.

## VII.   QUALIFICATIONS TO CONDUCT LEAD-BASED PAINT WORK

21.  All Lead-Based Paint inspections and Lead-Based Paint Hazard Reduction Work shall be consistent with the HUD Guidelines and conducted by individuals authorized to perform the work in accordance with the laws of the jurisdiction where the property is located.  Persons performing interim controls, visual assessments for ongoing operations and maintenance work, and general maintenance shall be trained in either HUD's one day "Lead Safe Work Practices" class or the HUD/EPA "Remodeling, Repair, and Painting" class.

22.  Defendant shall ensure that Lead-Based Paint inspections are not done by the same individual and/or same or related business entity who or which will perform Lead-Based Paint Hazard Reduction Work on the Subject Properties.

23.  Defendant shall ensure that Clearance Examinations are not conducted by the same individual and/or same or related business entity who or which conducted the Lead-Based Paint Hazard Reduction Work that is being evaluated by the dust Clearance Examination.

# VIII.   REPORTING REQUIREMENTS

24.a.   On or before the one (1) year anniversary of the entry of this Consent Decree, and annually thereafter until completion of all Lead-Based Paint Hazard Reduction Work, Defendant shall submit a written Annual Report to HUD and EPA. The Annual Report shall include, at a minimum: (1) a list of the property addresses where Lead-Based Paint inspections have been performed; (2) the status of Hazard Reduction Work activities, including the type of abatement or interim controls conducted and components treated, and a list of the property addresses and unit numbers where Hazard Reduction Work has been completed during that reporting period; (3) the status of ongoing operations and maintenance work activities in accordance with Paragraph 20; (4) any and all information concerning the cost of the inspections and Hazard Reduction Work performed; (5) any Clearance Reports that have not been previously provided to HUD under Paragraph 18.g.; and (6) any State, County, or City notices relating to Lead-Based Paint violations at the Subject Properties.

b.   Defendant shall comply, and shall ensure contractor compliance, with any State, County, and/or City requirements for conducting or reporting Lead-Based Paint inspections and Hazard Reduction Work in effect in a jurisdiction where a property subject to this Consent Decree is located, including but not limited to Cal. Code Regs., tit. 17, § 36000 and § 36100 (2004).

## IX.   <u>STIPULATED PENALTIES</u>

25.   If Defendant fails to make timely payment of the penalty or costs provided for in Section V, Defendant shall be required to pay as Stipulated Penalties $400 per day for each day that payment is late.  Stipulated Penalties shall accrue until such time as the original penalty and all accrued Stipulated Penalties are paid.

26.   If Defendant fails to complete testing as described in Paragraph 15, to comply with Paragraph 19, or to conduct ongoing operations and maintenance work as described in Paragraph 20, Defendant shall pay Stipulated Penalties of $200 per day per violation per unit, until the testing, EBL work as described in Paragraph 19, and/or ongoing operations and maintenance work is completed. If any Hazard Reduction Work fails because of Defendant's failure to follow the Hazard Reduction Plan, HUD Guidelines and/or conduct ongoing operations and maintenance work as described in Paragraph 20, those properties shall not be considered treated in accordance with this Consent Decree and Stipulated Penalties shall accrue.

27.   If Defendant fails to submit any information or reports to HUD, as described in Paragraphs 15, 16, 17, 18, and 24 in accordance with the requirements and/or deadlines set forth in this Consent Decree, Defendant shall pay Stipulated Penalties of $200 per day for each day the submission is deemed inadequate and/or late.

28.   If Defendant fails to deliver or cause to be delivered the Letter of Credit described in Paragraph 31 by the

date set forth in that Paragraph, Defendant shall be required to pay as Stipulated Penalties $400 per day for each day the delivery of the Letter of Credit is late.

29.   Payment of Stipulated Penalties shall be made to the United States in the manner set forth in Paragraph 9 of this Consent Decree.

30.   Stipulated Penalties shall accrue regardless of whether the United States has notified Defendant of the violation or made a demand for payment, but need only be paid upon demand.   All penalties shall begin to accrue on the first day after payment is due or a required activity has not been performed and shall continue to accrue through the date of payment, or until the required activity is performed.   However, the United States may, in its unreviewable discretion, waive or reduce the amount of any Stipulated Penalty.   Nothing herein shall prevent the United States from seeking other relief that may be available for non-compliance, nor prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

## X.   PERFORMANCE GUARANTEE

31.   As assurance of performance of certain of Defendant's obligations under this Consent Decree, within fifteen (15) days of the Effective Date of this Consent Decree, Defendant shall deliver or cause to be delivered to Craig Takenaka and Suzanne V. Spillane, Housing Division, Los Angeles City Attorney's Office, 200 North Main Street, 9th Floor, Los Angeles, CA 90012, an irrevocable letter of credit issued by a

federally-insured bank with offices in the State of California
(the "LC Issuer"), in the amount of $100,000.00, for the benefit
of the Los Angeles City Attorney's Office, Housing Division (the
"LC Beneficiary") to be used solely for reimbursing costs of
lead abatement work in residential housing in the City of Los
Angeles, in accordance with the LC Beneficiary's Letter of
Intent attached hereto as Appendix B, and having an expiry date
that is one hundred eighty (180) days after the sixth
anniversary of the date of issuance thereof (herein called the
"Letter of Credit").  The Letter of Credit shall be subject to
being drawn upon by the LC Beneficiary, in accordance with
Appendices C and D, solely in the event that within six (6)
years following the approval of the Hazard Reduction Plan
Defendant has failed to certify that Defendant has completed the
requirements of Section VI (Work To Be Performed) for at least
two hundred and seventy-five (275) units in the Subject
Properties; and/or Plaintiffs otherwise determine that Defendant
has failed to complete the requirements of Section VI (Work To
Be Performed) for at least two hundred and seventy-five (275)
units in the Subject Properties.

    32.  At any time commencing six (6) years after the
approval of the Hazard Reduction Plan, provided the LC
Beneficiary gives written notice to Defendant of its intention
to draw upon the Letter of Credit at least ten (10) business
days prior to doing so, the LC Beneficiary shall be entitled to
draw upon the Letter of Credit, by presentation to the LC Issuer
of the Letter of Credit, accompanied by a sight draft and a

certification, in accordance with the terms of the Letter of Credit. It is hereby agreed that the form of such certification shall be substantially as set forth in Appendix C attached hereto. Upon presentation of the Letter of Credit and the aforesaid documents to the LC Issuer, the LC Issuer shall have ten (10) business days in which to honor the Letter of Credit. Any funds drawn from the Letter of Credit by the LC Beneficiary are to be used solely for reimbursing costs of lead abatement work in residential housing in the City of Los Angeles.

33.   The Letter of Credit is subject to reduction by three hundred and sixty-four dollars ($364.00) for each unit in the Subject Properties where the work has been completed in accordance with Section VI (Work To Be Performed). The amount of the Letter of Credit shall be subject to reduction at the time an Annual Report is submitted in accordance with Paragraph 24.a. In any case in which Defendant is entitled to a reduction in the Letter of Credit as provided above, Defendant may make a written request to HUD, EPA, and the LC Beneficiary for such a reduction. Upon receipt of the applicable submission and such written request, within sixty (60) days, Plaintiffs shall determine whether Defendant has completed the requirements in Section VI such that Defendant qualifies for such a reduction. Upon such determination, the Plaintiffs will so notify the LC Beneficiary in writing, and the LC Beneficiary shall execute and deliver to the LC Issuer a reduction certificate substantially in the form set forth in Appendix D attached hereto, specifying the amount by which the Letter of Credit is reduced as

determined above and the resulting amount available to be drawn thereunder ("Reduction Certificate").  The parties agree that Defendant has not waived its right to contest such determination.  Upon delivery of any such Reduction Certificate, the LC Issuer's obligations under the Letter of Credit shall be reduced accordingly, and all references herein to the "Letter of Credit" shall be deemed to mean and refer to the Letter of Credit as so modified.  It is further agreed that, as between the parties, if Defendant shall have qualified for any reduction in the Letter of Credit as provided above, the amount that the LC Beneficiary shall be entitled to draw under the Letter of Credit, and the amount of Defendant's liability under Section X (Performance Guarantee) of this Consent Decree, shall be reduced accordingly, whether or not a Reduction Certificate is executed and delivered as required hereby.

34.  Upon determination by the Plaintiffs that the work required pursuant to Section VI (Work To Be Performed) has been completed in no fewer than two hundred and seventy-five (275) units, the LC Beneficiary shall surrender the Letter of Credit, and the same shall be cancelled and of no further force or effect.

35.  Nothing in this Consent Decree shall waive, limit, or affect, as against any of the other parties or any other person or entity, any right, remedy, or recourse of Defendant for any wrongful or unauthorized draw upon the Letter of Credit, or to prevent any wrongful or unauthorized draw upon the Letter of Credit.

## XI.   FORCE MAJEURE

36.   Defendant shall provide notice orally or by electronic or facsimile transmission to the Civil Division Chief of the United States Attorney's Office and the California Attorney General's Office, as detailed in Section XVI of this Consent Decree (Notice) as soon as possible, but not later than 72 hours after the time Defendant first knew of, or by the exercise of due diligence, should have known of, a claimed force majeure event.   Defendant shall also provide formal, written notice, as provided in Section XVI of this Consent Decree (Notice), within seven (7) days of the time Defendant first knew of, or by the exercise of due diligence, should have known of, the event.   The notice shall state the anticipated duration of any delay; its causes(s); Defendant's past and proposed actions to prevent or minimize any delay; a schedule for carrying out those actions; and Defendant's rationale for attributing any delay to a force majeure event.   Failure to provide oral and written notice as required by this Paragraph shall preclude Defendant from asserting any claim of force majeure.

37.   If the United States agrees that a force majeure event has occurred, the United States may agree to extend the time for Defendant to perform the affected requirements for the time necessary to complete those obligations.   An extension of time to perform the obligations affected by a force majeure event shall not, by itself, extend the time to perform any other obligation.   Where the United States and People agree to an

extension of time, the appropriate modification shall be made pursuant to Section XIX of this Consent Decree (Integration).

38.   If the United States does not agree that a force majeure event has occurred, or does not agree to the extension of time sought by Defendant, the United States' position shall be binding.   In any dispute involving force majeure, Defendant bears the burden of proving, by a preponderance of the evidence, that each claimed force majeure event is in fact a force majeure event; that Defendant gave the notice required by Paragraph 36 of this Section; that the force majeure event caused any delay Defendant claims was attributable to that event, and that Defendant exercised best efforts to prevent or minimize any delay caused by the event.

## XII. RIGHT OF ENTRY

39.   HUD, EPA, the People, and their representatives, contractors, consultants, and attorneys shall have the right of entry into and upon all Subject Properties owned or controlled by Defendant, at all reasonable times, upon proper presentation of credentials, for the purposes of:

a.   monitoring the progress of activities required by this Consent Decree;

b.   verifying any data or information required to be submitted pursuant to this Consent Decree;

c.   obtaining samples and, upon request, splits of any samples taken by Defendant or its consultants (upon request, Defendant will be provided with splits of all samples taken by the United States); and

d.   otherwise assessing Defendant's compliance with this Consent Decree.

40.   This Section in no way limits or affects any right of entry and inspection held by the United States, HUD, EPA, the State, the County, or the City pursuant to applicable federal, state or local laws, regulations, or permits.

## XIII.   COVENANT NOT TO SUE

41.   In consideration of the payments required by this Consent Decree and the work to be performed, and except as otherwise provided in this Consent Decree, the United States and the People covenant not to sue or take administrative or other action against Defendant arising out of violations of Section 1018 at the Subject Properties that occurred on or before the date of lodging of this Consent Decree.   This covenant not to sue with respect to Defendant is conditioned upon the complete and satisfactory performance by Defendant of its obligations under this Consent Decree.   This covenant not to sue extends only to Defendant and does not extend to any other person or business entity.

## XIV.   PLAINTIFFS' RESERVATIONS OF RIGHTS

42.   The covenant not to sue set forth above does not pertain to any matters other than those expressly specified in Paragraph 41.   The United States and the People reserve, and this Consent Decree is without prejudice to, all rights against Defendant with respect to all other matters, including but not limited to, the following:

a.   claims based on a failure by Defendant to meet a requirement of this Consent Decree;

b.   claims based upon violations of Section 1018 that occur after the date of lodging of this Consent Decree;

c.   criminal liability; and

d.   all claims not barred by Paragraph 41 of this Consent Decree.

## XV.   MISCELLANEOUS

43.   This Consent Decree in no way affects Defendant's responsibilities to comply with all federal, state, or local laws and regulations.

44.   Except as otherwise provided in this Consent Decree, each party shall bear its own costs and attorneys' fees in this action.

## XVI.   NOTICES AND SUBMISSIONS

45.   Whenever, under the terms of this Consent Decree, notice is required to be given or a document is required to be sent by one party to another, it shall be in writing and directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other party in writing.  Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of this Consent Decree with respect to the United States and Defendant.

46.   All notices and reports shall refer to this Consent Decree and the date of entry of the Consent Decree, and

1   shall cite the case name of <u>United States v. Linder & Associates</u>

2   and the case number.

3

4               *U.S. Attorney's Office*:

5

6                       Chief, Civil Division
                        United States Attorney's Office
7                       U.S. Department of Justice
                        Federal Building, Room 7516
8                       300 North Los Angeles Street
                        Los Angeles, California 90012
9                       213-894-2404
                        213-894-7819 (fax)
10                      lee.weidman@usdoj.gov

11

12              *U.S. Department of Justice*:

13

14                      Chief, Environmental Enforcement
                        Section
15                      U.S. Department of Justice
                        PO Box 7611
16                      Ben Franklin Station
                        Washington, DC  20044
17                      D.J. Ref. 90-5-1-1-07223/1

18

19

20              *U.S. Department of Housing and Urban Development*:

21                      Director, Compliance Assistance and
                        Enforcement Division
22                      Office of Healthy Homes and Lead Hazard
                        Control
23                      U.S. Department of Housing and Urban
                        Development
24                      451 7th Street, SW
25                      Room 8236
                        Washington, DC 20410
26

27

28

and

John B. Shumway
Deputy Assistant General Counsel
Office of General Counsel
U.S. Department of Housing and Urban
Development
451 7th Street, SW
Room 9253
Washington, DC 20410


*U.S. Environmental Protection Agency:*

Manager, Toxics Office (CED-4)
Communities and Ecosystems Division
U.S. Environmental Protection Agency
Region IX
75 Hawthorne Street
San Francisco, California 94105


*The California Attorney General's Office:*

Rose B. Fua
Deputy Attorney General
1515 Clay Street, Suite 2000
P.O. Box 70550
Oakland, California 94612-0550
510-622-2126
510-622-2272 (fax)
rose.fua@doj.ca.gov


*Defendant:*

David Linder
Linder & Associates
3699 Wilshire Blvd.
Suite 800
Los Angeles, California 90010-2719

With a copy to:


Edward D. Vaisbort, Esq.
Litchfield Cavo, LLP
344 North Central Avenue
Glendale, California 91203-2216
818-630-5025

47.   Any party may change either the notice recipient or the address for providing notices to it by serving all other parties with a notice setting forth such new notice recipient or address.

48.   Any notice, report, certification, data presentation, or other document submitted by Defendant pursuant to this Consent Decree which discusses, describes, demonstrates, supports any findings, or makes any representation concerning Defendant's compliance or non-compliance with any requirement of this Consent Decree shall be certified by Defendant or a duly authorized representative of Defendant.   A person is a "duly authorized representative" only if:   (a) the authorization is made in writing; (b) the authorization specifies either an individual or position having responsibility for overall operation of the regulated facility or activity (a duly authorized representative may thus be either a named individual or any individual occupying a named position); and (c) the

30

written authorization is submitted to the United States and the

People consistent with this Paragraph.

49.  The certification required by Paragraph 48, above, shall be in the following form:

> I certify that the information contained in or accompanying this [type of submission] is true, accurate and complete.  With regard to [the/those identified portion(s)] of this [type of submission] for which I cannot personally verify [its/their] accuracy, I certify under penalty of law that this [type of submission] and all attachments were prepared in accordance with procedures designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, or the immediate supervisor of such persons, the information submitted is, to the best of my knowledge and belief, true, accurate and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fines and imprisonment for knowing violations.

Signature:  _____

Name:       _____

Title:      _____

## XVII.   RETENTION OF JURISDICTION

50.  This Court shall retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Consent Decree.

## XVIII.   INTEGRATION

51.  This Consent Decree and its Appendices constitute the final, complete and exclusive agreement and understanding

between the parties with respect to the settlement embodied in this Consent Decree.  It may not be enlarged, modified, or altered unless such modifications are made in writing and approved by the parties and the Court.  The parties acknowledge there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree.

### XIX.   LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

52.   Defendant agrees and acknowledges that final approval of this Consent Decree by the United States and entry of this Consent Decree is subject to the requirements of 28 C.F.R. § 50.7, which provides for notice of the lodging of this Consent Decree in the Federal Register, opportunity for public comment for at least thirty (30) days, and consideration of any comments prior to entry of the Consent Decree by the Court.  The United States and the People reserve their right to withdraw consent to this Consent Decree based on comments received during the public notice period.  Defendant consents to entry of this Consent Decree without further notice to the Court.

53.   If for any reason the Court should decline to approve this Consent Decree in the form presented, this Consent Decree is voidable at the discretion of Plaintiffs or Defendant and the terms of the Consent Decree may not be used as evidence in any litigation between the parties.

### XX.   EFFECTIVE DATE

54.   The effective date of this Consent Decree shall be the date upon which it is entered by the Court.

## XXI.  RECORD RETENTION AND PRESERVATION

55.  Defendant shall preserve, during the pendency of this Consent Decree and for a minimum of at least twelve (12) months after its termination, all documents and records in its custody, control or possession and in the custody, control or possession of its employees, agents, assigns, contractors, subcontractors or consultants, which in any manner relate to this Consent Decree or to the performance of work under this Consent Decree.  At the end of this twelve (12) month period and at least thirty (30) calendar days before any document or record is destroyed, Defendant shall notify and make available to the United States and the People such documents and records, or shall provide the originals or accurate, true and complete copies of such documents and records to the United States and the People.  Defendant shall not destroy any document or record to which the United States or the People have requested access for inspection or copying until the United States and the People have obtained such access or copies or withdrawn its request for such access or copies.

## XXII.   SIGNATORIES/SERVICE

56.  Each undersigned representative of the United States, the People, and Defendant certifies that he or she has reviewed this Consent Decree, had the opportunity to have this Consent Decree reviewed by counsel, and is authorized to enter

into the terms and conditions of this Consent Decree and to execute and bind legally such party to this document.

57.   Defendant hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree, unless the United States and the People have notified Defendant in writing that it no longer supports entry of the Consent Decree based on public comments received pursuant to Paragraph 52 above.

58.   Defendant agrees that the person identified on its behalf under Section XVI is authorized to accept service of process by mail on behalf of Defendant with respect to all matters arising under or relating to this Consent Decree. Defendant hereby agrees to accept service by certified mail in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including but not limited to, service of a summons.

59.   Upon approval and entry of this Consent Decree by the Court, the Consent Decree shall constitute a final judgment pursuant to Rules 54 and 58 of the Federal Rule of Civil Procedure.

## XXIII.   **TERMINATION**

60.   This Consent Decree shall terminate within thirty (30) days after all of the following have occurred:

a.   Defendant has completed all work required by this Consent Decree;

b.   Defendant has paid all penalties, costs, and interest due under this Consent Decree and established the Letter of Credit required under Section X (Performance Guarantee) and no penalties or costs are outstanding or owed to the United States and the People;

c.   Operation and maintenance plans consistent with Chapters 6 and 17 of the HUD Guidelines are in place for all Subject Properties, and Defendant has complied with such operation and maintenance plans;

d.   Notification of all Subject Property building owners that operation and maintenance activities shall be conducted in accordance with Chapters 6 and 17 of the HUD Guidelines;

e.   Defendant has certified compliance with the terms and conditions of this Consent Decree to the Court, the United States, and the People; and

f.   The United States has not disputed Defendant's certification within sixty (60) days of receiving it.   If the United States disputes Defendant's certification, the Consent Decree shall remain in effect pending resolution of the dispute by the parties or the Court.

So entered in accordance with the foregoing this _____ day of _____, 2007

_____
UNITED STATES DISTRICT COURT JUDGE

<u>United States v. Linder & Associates</u>

THE UNDERSIGNED PARTIES enter into this Consent Decree in the above matter, relating to the sites enumerated in this Consent Decree:

FOR PLAINTIFF, UNITED STATES OF AMERICA:

MATTHEW J. MCKEOWN
Acting Assistant Attorney General
Environment and Natural Resources Division


_____   Date _2/22/17_
W. BENJAMIN FISHEROW
Deputy Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

GEORGE S. CARDONA
Acting United States Attorney
LEON W. WEIDMAN
Assistant United States Attorney
Chief, Civil Division


*Monica L. Miller*                     Date  4/16/07

MONICA L. MILLER
Assistant United States Attorney
Room 7516, Federal Building
300 North Los Angeles Street
Los Angeles, California 90012

United States v. Linder & Associates

FOR UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT:

Date 7/13/06

JOHN P. OPITZ
Acting Associate General Counsel for the
Office of Finance and Regulatory Compliance

Date 7/13/06

JOHN B. SHUMWAY
Deputy Assistant General Counsel for Program
    Compliance
Office of General Counsel
U.S. Department of Housing and Urban Development
451 Seventh Street, SW
Washington, DC 20410

<u>United States v. Linder & Associates</u>

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:


*Nancy J. Marvel for*                    Date *nov. 7, 2006*
GRANTA Y. NAKAYAMA
Assistant Administrator
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
Washington, D.C.

1    United States v. Linder & Associates

2

3    FOR THE PEOPLE OF THE STATE OF CALIFORNIA, EX REL. ATTORNEY

4    GENERAL EDMUND G. BROWN, JR.:

5

6

7

8

9                                                    Date  3/13/07

10   BRIAN HEMBACHER
     Deputy Attorney General
11   State of California
     300 S. Spring Street
12   Suite 1702
     Los Angeles, California 90013

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  United States v. Linder & Associates

2

3  FOR LINDER & ASSOCIATES:

4

5

6

7

8

9  _____    Date____6/12/06_____

10  David Linder
President of Linder & Associates, a California Corporation

11  3699 Wilshire Blvd.
Suite 800

12  Los Angeles, California 90010-2719
213-487-0800

13  213-487-7066 (fax)

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

41

## APPENDIX A
### (Subject Properties with Street Addresses, Number of Units, Units with Children, and Construction Date)

| PROPERTY ADDRESS | # OF BEDROOMS | START OF MGMT | DATE CONSTRUTCTED | Unit   Children |
|---|---|---|---|---|
| 1159-1173 S WESTMORELAND LOS ANGELES, CA 90006 | 2 - 2 BEDROOM<br>4 - 1 BEDROOM<br>6 - 0 BEDROOM | 4/99 | 1940 | 1159 - 2c<br>1161 – 1 –2c<br>1167 – 0c<br>1171 – 1 –0c<br>1173 – 3 – Oc<br>1173 - Oc |
| 1172 N. KINGSLEY DR. LOS ANGELES, CA 90029 | 5 - 1 BEDROOM<br>11 - 0 BEDROOM | 3/98 | 1926 | 100 – 1c<br>101 – 0c<br>106 – 1c<br>200 – 1c<br>201 – 0c<br>206 – 0c |
| 1220 S. HARVARD AVE. LOS ANGELES, CA 90046 | 3 - 1 BEDROOM<br>19 - 0 BEDROOM | 5/99 | 1932 | No Lead |
| 2941-2943 ½W. 8TH ST. LOS ANGELES, CA 90005 | 4 - 2 BEDROOM | 7/90 | 1923 | 2941 – 0c<br>2941 ½ -0c<br>2943 – 1<br>2943 ½ -3c |
| 400-402 S. ALEXANDRIA AVE. | 1 - 4 BEDROOM<br>1 - 2 BEDROOM | 4/98 | 1935 | No Children |

| | | | | |
|---|---|---|---|---|
| LOS ANGELES, CA  90020 | 7 - 1 BEDROOM<br>3 - 0 BEDROOM | | | |
| 806 N. AUSTIN AVE.<br>INGLEWOOD, CA  90302 | 6 - 2 BEDROOM | 3/99 | 1956 | No Lead |
| 211-217 ¾ N RENO ST.<br>LOS ANGELES, CA 90026 | 1- 3 BEDROOM<br>15 - 2 BEDROOM | 5/93 | 1925 | 211 – 2c<br>213 – 0c<br>215 – 0c<br>217 – 0c<br>211 ½ -1c<br>211 ¼ 0c<br>211 ¾ 0c<br>213 ½ -0c<br>213 ¼ 0c<br>213 ¾ -3c<br>215 ½ -0c<br>215 ¼ 1c<br>215 ¾ -3c<br>217 ½ -0c<br>217 ¼ 2c<br>217 ¾ 2c |
| 1325 S. BRONSON AVE.<br>LOS ANGELES, CA  90019 | 8 - 1 BEDROOM<br>4 - 0 BEDROOM | 5/93 | 13251925(12) | 103 – 2c<br>104 – 4c<br>105 – 2c<br>106 – 1c<br>203 – 2c<br>204 – 2c<br>205 – 3c |

| | | | | | 206 – Ic |
|---|---|---|---|---|---|
| 1329 S Bronson | 1 – 2BEDROOM | 5/93 | 1923 | | 1327 – 0C |
| | 1 – 1BEDROOM | | | | 1329 – 2C |
| 1335 S. Bronson | 16 – 0BEDROOM | | 1923 | | |
| 1111 S. NORTON AVE. | 4 - 1 BEDROOM | 7/90 | 1928 | | 101 – 2C |
| LOS ANGELES, CA  90019 | 16 - 0 BEDROOM | | | | 102 – 0C |
| | | | | | 201 – 0C |
| | | | | | 202 – 3C |

| | | | | |
|---|---|---|---|---|
| 5705 CARLTON WAY<br>LOS ANGELES, CA 90028 | 1 - 2 BEDROOM<br>10 - 1 BEDROOM | 3/98 | 1954 | |
| 724-743 ½ S. CARONDELET<br>LOS ANGELES, CA 90057 | 4 - 2 BEDROOM<br>8 - 1 BEDROOM | 1/97 | 1914 | 724 – 0c<br>726 – 2c<br>728 – 0c<br>730 – 0c<br>732 – 1c<br>734 – 0c<br>724 ½ -0c<br>726 ½ -0c<br>728 ½ -0c<br>730 ½ 0c<br>732 ½ -2c<br>734 ½ -0c |
| 1326 W. 11TH ST.<br>LOS ANGELES, CA 90015 | 3 - 1 BEDROOM<br>15 - 0 BEDROOM | 5/93 | 1923 | 105 – 1c<br>201 – 1c<br>301 – 2c |
| 3458-3460 ¾ E.7TH ST.<br>LOS ANGELES, CA 90023 | 8 - 1 BEDROOM | 11/96 | 1923 | 3458 – 0c<br>3458 ½ -2c<br>3458 ¾ -1c<br>3460 – 4c<br>3460 ½ -2c<br>3460 ¼ 2c<br>3460 ¾ 1c |
| 1648 EDGECLIFFE DR.<br>LOS ANGELES, CA 90026 | 5 - 2 BEDROOM<br>2 - 0 BEDROOM | 4/98 | 1962 | No Lead |

| | | | | |
|---|---|---|---|---|
| 5212-5216½ FOUNTAIN AVE. LOS ANGELES, CA  90029 | 10 -1 BEDROOM | 5/98 | 1918 | |
| 2850 FRANCIS AVE. LOS ANGELES, CA  90005 | 4 - 1 BEDROOM 12 - 0 BEDROOM | 5/93 | 1923 | 1 – 5c 8 – 0c 9 – 1c 17 – 0c |
| 1918 N. GRACE AVE. LOS ANGELES, CA  90068 | 17 - 1 BEDROOM 1 - 0 BEDROOM | 7/90 | 1910 | 4 – 1c 6 – 2c 8 – 1c 12 – 1c 17 – 3c All other units have no children |
| 3730-3740 W. 9TH LOS ANGELES, CA 90019 | 4 – 1BEDROOM 2 – 2BEFROOM | 3/98 | 1944 | 3730 – 0c 3736 – 1 1c 2 – 2c 3 – 2c 4 – 2c 3740 – 2c |
| 909 S. GRAMERCY DR. LOS ANGELES, CA  90019 | 4- 1 BEDROOM | | | 1 – 0c 2 – 0c 3 – 0c 4 – 2c |
| 567 E. HAZEL ST. INGLEWOOD, CA  90302 | 1 - 3 BEDROOM 4 - 2 BEDROOM 5 - 1 BEDROOM | 7/98 | 1960 | No Lead |

| 15504&15512 HESPERIA RD. | 3 - 2 BEDROOM | | | No Lead |
| VICTORVILLE, CA  92392 | 3 - 1 BEDROOM | 7/97 | | |
| | 1 - 3 BEDROOM | | | No Lead |
| 218 E. HYDE PARK | 1 - 2 BEDROOM | 11/98 | 1963 | |
| INGLEWOOD, CA  90302 | 4 - 1 BEDROOM | | | |

| | | | | |
|---|---|---|---|---|
| 12295-13013 LAKOTA RD. APPLE VALLEY, CA 92308 | 6 - 2 BEDROOM | 7/97 | 1975 | No Lead |
| 325 S. COLUMBIA AVE. LOS ANGELES, CA 90057 | 1 - 1 BEDROOM 34 - 0 BEDROOM | 7/90 | 1922 | 1 – 0c |
| 1010 N. MADISON AVE. LOS ANGELES, CA 90029 | 6 - 1 BEDROOM 21 - 0 BEDROOM | 6/92 | 1927 | 2 – 1c 12 – 3c 14 – 0c 15 – 1c 26 – 0c 28 – 0c |
| 655 N. MANHATTAN PL. LOS ANGELES, CA 90004 | 7 - 1 BEDROOM 11 - 2 BEDROOM | 7/90 | 1953 | No Lead |
| 5044 MAPLEWOOD AVE. LOS ANGELES, CA 90004 | 2 - 2 BEDROOM 6 - 1 BEDROOM | 3/98 | 1962 | No Lead |
| 3703-3707 ½ MONO ST. LOS ANGELES, CA 90027 | 2 - 1 BEDROOM 4 - 0 BEDROOM | 7/93 | 1924 - Duplex 1927-(4 UNIT) | 3703 – 0c 3703 ½ -0c |
| 8233 S. FIGUEROA ST. LOS ANGELES, CA 90003 | 1 - 2 BEDROOM 13 - 1 BEDROOM 25 - 0 BEDROOM | 2/92 | 1947-14 UNIT | Demolished |
| | 3 - 2 BEDROOM | | | 101 – 2c |

| | | | | |
|---|---|---|---|---|
| 751 S. NORMANDIE AVE.<br>LOS ANGELES, CA  90005 | 6 - 1 BEDROOM<br>47 - 0 BEDROOM | 9/92 | 1928 | 102 – 1c<br>201 – 0c<br>202 – 0c<br>301 – 0c<br>302 – 0c<br>401 – 2c<br>402 – 0c<br>501 – 4c |
| 1026 S. NORTON AVE.<br>LOS ANGELES, CA  90019 | 5 - 2 BEDROOM<br>5 - 1 BEDROOM | 11/93 | 1957 | No Lead |
| 8926 ORION AVE.<br>NORTH HILLS, CA  91343 | 1 - 3 BEDROOM<br>30 - 2 BEDROOM<br>4 - 1 BEDROOM | 7/90 | 1964 | No Lead |

| Address | Units | Date | Year | Lead |
|---|---|---|---|---|
| 1308 S. 5TH AVE.<br>LOS ANGELES, CA 90019 | 7 - 0 BEDROOM | 12/94 | 1924 | |
| 1314 S. 5th AVE.<br>LOS ANGELES, CA 90019 | 2 – 0 BEDROOMS<br>4 – 1BEDROOM | 12/94 | 1924 | 1 – 1C<br>2 – 0C<br>3 – 2C<br>4 – 0C |
| 1381 KENISTON AVE.<br>LOS ANGELES, CA 90019 | 7 – 1 BEDROOM<br>1 – 2BEFROOM | 9/98 | 1958 | 17 – 0C<br>18 – 2C<br>19 – 2C<br>20 – 1C<br>21 – 0C<br>22 – 2C<br>23 – 0C<br>24 – 0C |
| 1631-1649 N. RODNEY DR<br>LOS ANGELES, CA 90027 | 6 - 2 BEDROOM<br>16 - 1 BEDROOM<br>4 - 0 BEDROOM | 3/99 | 1942 | 1643 – 1 – 1C<br>All other units<br>no children |
| 4729 SAN VICENTE BLVD.<br>LOS ANGELES, CA 90019 | 19 – 1 BEDROOM<br>2 – 2 BEDROOM | 9/98 | 1951 | No Lead |
| 4757 – 4763 SAN VICENTE<br>LOS ANGELES, CA 90019 | 14 – 1 BEDROOMS<br>2 – 2 BEDROOMS | 9/98 | 1954 | 1 – 2C<br>2 – 2C<br>3 – 1C<br>4 – 3C<br>5 - 2C<br>6 – 3C<br>7 – 4C<br>8 – 0C |

5D

| | | | | |
|---|---|---|---|---|
| | | | | 9 – 0C |
| | | | | 10- - 3C |
| | | | | 11 – 2C |
| | | | | 12 – 3C |
| | | | | 13 – 0C |
| | | | | 14 – 0C |
| | | | | 15 – 3C |
| | | | | 16 – 0C |
| 4809 – 4819 San Vicente<br>LOS ANGELES, CA 90019 | 16 - 1 BEDROOM<br>4 – 0 BEDROOM | 9/98 | 1954 | 2 – 1C |
| | | | | 3 – 0C |
| | | | | 4 - 0C |
| | | | | 5 – 1C |
| | | | | 7 – 0C |
| | | | | 8 – 0C |
| | | | | 9 – 0C |
| | | | | 10 – 1C |
| | | | | 12 – 0C |
| | | | | 14 – 2C |
| | | | | 15 – 2C |
| | | | | 16 – 1C |
| | | | | 17 – 0C |
| | | | | 18 – 0C |
| | | | | 19 – 0C. |
| | | | | 20 – 1C |
| | | | | 21 – 0C |
| 711 S. HARVARD<br>LOS ANGELES, CA 90005 | 7 – 1 BEDROOM<br>2 – 0 -BEDROOM | | 1945 | No Lead |
| 717 S. HARVARD | 2 – 0 BEDROOM | | 1955 | No Lead |

| | | | | |
|---|---|---|---|---|
| LOS ANGELES, CA 90005 | 4 – 1 BEDROOM  2 – 2 BEDROOM | | | |
| 723 S. HARVARD  LOS ANGELES, CA 90005 | 3 – 0 BEDROOM  5 – 1 BEDROOM | | 1964 | No Lead |
| | | | | |
| 625 N. SYCAMORE AVE.  LOS ANGELES. CA 90036 | 9 - 2 BEDROOM  27 - 1 BEDROOM  15 - 0 BEDROOM | 11/98 | 1972 | No Lead |

| | | | | |
|---|---|---|---|---|
| 15702-15720 TERN RD.<br>VICTORVILLE, CA 92394 | 4 - 2 BEDROOM<br>6 - 1 BEDROOM | 7/97 | 1972 | No Lead |
| 511 VENICE WAY<br>INGLEWOOD, CA 90302 | 1 - 3 BEDROOM<br>2 - 2 BEDROOM<br>9 - 1 BEDROOM | 7/98 | 1960 | No Lead |
| 10625-35 S. VERMONT AVE.<br>LOS ANGELES, CA 90044 | 1 - 4 BEDROOM<br>3 - 1 BEDROOM<br>12 - 0 BEDROOM | 3/95 | 1936-1 UNIT<br>1949-3 UNITS<br>1952 12 UNITS | 25 ½ - 1c<br>27 – 0c<br>27 ½ - 0c<br>35 – 3c |
| 1251 S. WESTMORELAND AVE<br>LOS ANGELES, CA  90006 | 20 - 1 BEDROOM<br>4 - 0 BEDROOM | 3/99 | 1940 | No Lead<br>Demolished |
| 1521 WILCOX AVE.<br>1523 & 23 ½ WILCOX AVE<br>HOLLYWOOD, CA 90028 | 2 - 1 BEDROOM<br>20 - 0 BEDROOM | 5/93 | 1521-1923<br>1523 – 1937<br>1523 ½- 1937 | 101 - 0c<br>201 - 1c |
| 427 NORMANDIE PL.<br>LOS ANGELES, CA 90004 | 8- 1 BEDROOM | 5/93 | 1926 | 1 – 4c<br>2 – 2c<br>3 – 3c<br>4 – 1c<br>5 – 0c<br>6 – 0c<br>7 – 0c<br>8 – 3c |

| | | | | |
|---|---|---|---|---|
| 431 NORMANDIE Pl. LOS ANGELES, CA 90004 | 8 1 BEDROOM | 5/93 | 1926 | 1 – 2C<br>2 – 0C<br>3 – 1C<br>4 – 1C<br>5 – 0C<br>6  - 0C<br>7 – 0C<br>8 – 3C |
| 825 S. WINDSOR BLVD. LOS ANGELES, CA  90005 | 4 - 2 BEDROOM 11 - 1 BEDROOM | 9/98 | 1957 | No Lead |

**APPENDIX B**

**FORM OF BENEFICIARY LETTER OF INTENT**

[Date]

Chief, Civil Division

United States Attorney's Office

U.S. Department of Justice

Federal Building, Room 7516

300 North Los Angeles Street

Los Angeles, California 90012


Director, Compliance Assistance and Enforcement Division

Office of Healthy Homes and Lead Hazard Control

U.S. Department of Housing and Urban Development

451 7th Street, SW

Room P-3206

Washington, DC 20410


John Shumway

Deputy Assistant General Counsel

Office of General Counsel

US Department of Housing and Urban Development

451 7th Street, SW

Room 9253

Washington, DC 20410

Manager, Toxics Office (CED-4)

Communities and Ecosystems Division

US Environmental Protection Agency

Region IX

75 Hawthorne Street

San Francisco, California 94105


Rose Fua

Deputy Attorney General

1515 Clay Street, Suite 2000

P.O. Box 70550

Oakland, California 94612-0500




Re:    Letter of Credit No. _____, dated _____, 200_.


Ladies and Gentlemen:

[Name of Beneficiary] located at [address of Beneficiary] has agreed to be the beneficiary of the above referenced irrevocable letter of credit ("Letter of Credit"). [Beneficiary] is aware of the terms set forth in the Consent Decree between the <u>United States, the People, and Linder & Associates,      cv      (CDCA)</u> entered by the court on _____, ("Consent Decree.") Consistent with the terms of the Consent Decree, [Beneficiary] will use the funds drawn from the Letter of Credit solely for the purpose of lead abatement in residential dwelling units in the City of Los Angeles. Within two years of receipt of funds from the issuer of the Letter of Credit, Beneficiary will report on the status of its use of the funds to the United States and the People at the addresses listed above.

1

2

3

[Name of Beneficiary]

By:_____

[Insert name and title of
authorized officer]

## APPENDIX C

## FORM OF LETTER OF CREDIT CERTIFICATION

[Date of Draft]

[Name and Address of

Issuing Bank]

Re:      Letter of Credit No. _____, dated _____, 200_.

Ladies and Gentlemen:

We refer to your Irrevocable Letter of Credit No. _____ dated _____, 200_ (the "Letter of Credit") issued for the account of Linder & Associates (the "Applicant"). Any term which is defined in the Letter of Credit shall have the same meaning when used herein. The undersigned, a duly authorized officer of _____[Beneficiary]_____ ("we" or "us"), hereby certifies to you that:

1.      The Beneficiary is aware of a certain case filed in the United States District Court for the Central District of California, captioned as <u>United States of America vs. Linder & Associates</u>, Case No. _____ (the "Subject Action"). In the Subject Action, the parties thereto, through counsel, filed a certain Consent Decree that was entered in the Subject Action on _____, 200_ (the "Consent Decree"). The Letter of Credit was obtained and provided by Applicant to assure the performance of certain obligations of Applicant under the terms of said Consent Decree.

2.      Consistent with the terms of the Consent Decree, we hereby make demand under the Letter of Credit, by our presentment of the sight draft accompanying this Certificate, for payment of $_____, representing the amount that the Beneficiary is entitled to draw under the Letter of Credit pursuant to the Consent Decree. An authorized representative of the United States Environmental Protection Agency ("EPA") or United States Department of Housing and Urban Development ("HUD") has provided a signed statement (1) that Linder & Associates failed to certify it has completed the requirements of Section VI of the Consent Decree for at least two hundred and seventy-five (275) units

in the Subject Properties as defined in the Consent Decree; or (2) that EPA and HUD have determined that Linder & Associates failed to complete the requirements of Section VI of the Consent Decree for at least two hundred and seventy-five (275) units in the Subject Properties as defined in the Consent Decree.

3.   Funds drawn from the Letter of Credit by us will be used solely for reimbursing costs of lead abatement work in residential housing in the City of Los Angeles.

4.   We request that the payment hereby demanded be made by wire transfer to the following account:  Account Number _____ [insert account number], in the name of _____ [insert account name], with _____ [insert name and address of banking institution to receive funds], ABA No. _____ [insert ABA routing number of recipient bank].

IN WITNESS WHEREOF, we have executed and delivered this Certificate as of the ___ day of _____, 200_.

[Name of Beneficiary]

By:_____
    [Insert name and title of authorized officer]

**APPENDIX D**

**FORM OF LETTER OF CREDIT REDUCTION CERTIFICATE**

[Date of Draft]

[Name and Address of

Issuing Bank]

Re:    Letter of Credit No._____, dated _____, 200_.

Ladies and Gentlemen:

We refer to your Irrevocable Letter of Credit No._____ dated _____, 200_ (the "Letter of Credit") issued for the account of Linder & Associates (the "Applicant"). Any term which is defined in the Letter of Credit shall have the same meaning when used herein. The undersigned, a duly authorized officer of _____[Beneficiary]_____ ("we" or "us"), hereby certifies to you that:

1.    The Beneficiary is aware of a certain case filed with the United States District Court for the Central District of California, captioned as United States of America v. Linder & Associates, Case No. _____ (the "Subject Action"). In the Subject Action, the parties thereto, through counsel, filed a certain Consent Decree that was entered in the Subject Action on _____, 200_ (the "Consent Decree"). The Letter of Credit was obtained and provided by Applicant to assure the performance of certain obligations of Applicant under the terms of said Consent Decree.

2.    An authorized representative of the United States Environmental Protection Agency ("EPA") or United States Department of Housing and Urban Development ("HUD") has provided a signed statement that Linder & Associates certified that it has completed the requirements of Section VI of the Consent Decree for ___ units in the Subject Properties as defined in the Consent Decree. For the completion of each unit, pursuant to the terms of the Consent Decree, the Letter of Credit is to be reduced by $364.00. We hereby agree that the amount of the Letter of Credit shall be permanently reduced by $_____ in accordance with the provisions of the Consent Decree. Accordingly, the amount we shall hereafter be entitled to draw under the Letter of Credit shall not exceed $_____. This

Certificate constitutes an amendment to the Letter of Credit, which amendment is effected by delivery of this Certificate, without further action by any person.

IN WITNESS WHEREOF, we have executed and delivered this Certificate as of the ___ day of _____, 200_.

[Name of Beneficiary]


By:_____
[Insert name and title of authorized officer]